**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **INSTANT ONE MEDIA, INC.,** Plaintiff, v. **EZFAUXDECOR, LLC,** *et al*., Defendants. | Civil Action Number 1:19-cv-00540-WMR |

**PLAINTIFF'S REPLY BRIEF ON**
**PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR DELIBERATE AND ONGOING SPOLIATION OF TRIAL EVIDENCE**

COMES NOW Plaintiff, Instant One Media, Inc. ("IOM"), and files Plaintiff's Reply Brief ("Reply") on Plaintiff's Motion for Sanctions Against Defendants for Deliberate and Ongoing Spoliation of Trial Evidence ("Motion") showing the Court as follows:

**I.  INTRODUCTION**

Defendants misrepresent that IOM "insist[s] that the infringement continue unchanged."[1] To the contrary, IOM insisted that Defendants "remove completely all of the products that are sold under the violative URLs."[2] The current spoliation problem arises because Defendants' product listings have <u>increased</u> (e.g., more than five-fold)[3] without any preservation or documentation of those changes.

At bottom, Defendants have: (a) <u>increased</u> their listings under URLs with

---

[1]  Defendants' Response to Motion for Sanctions ("Response"), Doc. 109, 2020-Sep-02, at p. 1.
[2]  Exh. B to Plaintiff's Motion for Sanctions Against Defendants for Deliberate and Ongoing Spoliation of Trial Evidence ("Motion"), Doc. 106-2, p. 1.
[3]  For example, from five (5) products (see, Doc. 106-3) to twenty-five (25) products (see, Doc. 106-4).

"Instant Granite" and "Instant Stainless"; but (b) <u>failed</u> to document the changes.

Defendants' deliberate spoliation of evidence requires the harshest sanctions.

## II.  CORRECTIONS TO DEFENDANTS' MISREPRESENTED FACTS

Defendants misrepresent several facts in their Response.

First, Defendants allege that IOM "insist[s] that the infringement <u>continue</u> unchanged."[4]  This is false.  IOM insisted that Defendants <u>discontinue</u> their ongoing infringement.  Quoting directly from IOM's email message to Defendants:

> [W]e are asking that your clients <u>remove completely all of the products that are sold under the violative URLs</u>.  In other words, have your clients sell products under a different URL without "Instant Granite" or "Instant Stainless"; not under the URLs that clearly show "Instant Granite" or "Instant Stainless."[5]

To be clear, the spoliation problem arises because Defendants have <u>increased</u> their listings on the URLs; <u>not</u> because Defendants removed (or de-listed) all of their product listings.[6]  Because of Defendants' <u>increased</u> product listings, IOM demanded that Defendants preserve the evidence of those changes.[7]

---

[4]  Response, Doc. 109, at p. 1 (emphasis supplied).

[5]  Exh. B to Motion, Doc. 106-2, p. 1 (emphasis supplied).

[6]  *Id*. ("It would not be problematic if there were no commercial products under those URLs (meaning, if there were zero (0) products listed under those URLs)"; "If there was no product currently listed under any of these violative URLs, then our PDF exhibits would be sufficient to show the sites as they were preserved on 2020-APR-15.  However, because the Trial Exhibits continue to change and because Plaintiff has no control over those changes (insofar as they are controlled from Defendants' accounts), it is Defendants' duty to preserve the changes that Defendants have made (and continue to make) to that evidence").

[7]  *Id*. ("It is clear from these changes that your clients are able to stop their ongoing violations; they are simply not willing to stop . . . [w]e ask that

Second, Defendants assert that the URLs have changed and that IOM complains about the changes to the URLs.[8]  This is false.  The URLs themselves have not changed; instead, Defendants' products listed under those URLs have changed.

As shown clearly from the Exhibits:

(a) the URL from **2020-Apr-16** (date of the Trial Exhibit) is: https://www.ebay.com/str/EzFauxDecor/Instant-Stainless-Film-/_i.html?_storecat=17;[9]

(b) the URL from **2020-Aug-27** (four (4) months later) is: https://www.ebay.com/str/EzFauxDecor/Instant-Stainless-Film-/_i.html?_storecat=17.[10]

The two (2) URLs are identical.  Clearly, IOM never complained (nor could have complained) about the URLs standing alone.[11]  IOM's complaint is (and always has been) about Defendants' products listings in conjunction with the URLs.

Third, Defendants insist that the now-destroyed evidence was "freely available to Plaintiff from the internet."[12]  This is false.  The now-destroyed

---

Defendants . . . describe all of their efforts to preserve the now-altered evidence").

[8] Response, Doc. 109, at pp. 1 ("Because these URLs have changed over time"), 3 ("Notwithstanding the fact that these URLs may be changing"), and 4 (alleging that IOM "even attached examples of the claimed changing URLs to its motion").

[9] Exh. C to Motion, Doc. 106-3.

[10] Exh. D to Motion, Doc. 106-4.

[11] For clarity, IOM's position is that Defendants fully controlled the creation of the URLs and, more specifically, that Defendants fully controlled whether or not "Instant Granite" or "Instant Stainless" appeared in those URLs.

[12] Response, Doc. 109, at p. 4.

evidence includes Defendants' product listings and how precisely those product listings changed (e.g., when, how, etc.).  The product listings are changed by Defendants (not by eBay or by Amazon).  To be clear, IOM cannot know the extent of how or when Defendants have changed (or continue to change) their product listings.  IOM also has no access to Defendants' accounts to audit how or when those product listings changed (or continue to change).  Succinctly stated, the now-destroyed evidence is not now (nor has been before) "freely available to Plaintiff from the internet."[13]

With Defendants' misrepresentations addressed, IOM now turn to Defendants' arguments.

### III.   ARGUMENT

#### A.   *Defendants Misunderstand the Importance of the Now-Destroyed Evidence*

Defendants appear to misunderstand: (1) what they destroyed; and (2) why that now-destroyed evidence is crucial.  Because of the importance of the now-destroyed evidence, IOM first describes what precisely has been destroyed and, second, explains why that now-destroyed evidence is crucial.

##### 1.   The Now-Destroyed Evidence Includes Product Listings on the Pages That Appear Under the Identified URLs, Including When and How Precisely Those Pages Have Changed

The evidence that Defendants destroyed is not the URL standing alone. Rather, the now-destroyed evidence includes: (a) product listings that appeared

---

[13] *Id.*

under the URLs (e.g., product listings, descriptions of the listed products, etc.); (b) a record of <u>how</u> precisely those product listings were changed (e.g., de-listed or removed, modified, re-listed, etc.); and (c) <u>when</u> precisely those product listings were changed (e.g., on the same date as when the listings changed on the URLs).

### 2. The Now-Destroyed Evidence Was Crucial to Show What Defendants Did or Did Not Control

The now-destroyed evidence was crucial to show what Defendants did (or did not) control, which (according to Defendants) "is an issue for the jury."[14]

For example, if listings disappeared under the URLs in response to de-listing of products by Defendants, then the evidence would have shown to a jury that Defendants directly controlled the removal of content from the URLs. The jury no longer has the ability to consider that evidence because it has been destroyed.

Similarly, if listings under the URLs changed in response to Defendants modifying their product descriptions, then the evidence would have shown to the jury that Defendants had direct control over changes to the contents under the URLs. Again, the jury no longer has the ability to consider that crucial evidence.

Likewise, if listings appeared under various URLs when Defendants created or re-listed product offerings, then the evidence would have shown to the jury that Defendants had direct control in placing content under the URLs. That evidence no longer exists for the jury to consider.

At bottom, the now-destroyed evidence showed what Defendants did (or did

---

[14] *Id*. at p. 2.

not) control, which "is an issue for the jury."[15]

With this in mind, each of Defendants' arguments is addressed *seriatim*.

### B. *Defendants' Own Arguments Show the Importance of the Evidence That Defendants Destroyed*

#### 1. The Now-Destroyed Evidence Is the Very Evidence That Would Have Shown That Defendants Controlled the Listings That Appeared Under the URLs

Defendants' first argue that Defendants "are not, and have never been, in control of the URLs"[16] and insist that "[w]hat Defendants control or don't control is an issue for the jury."[17]

Although IOM disagrees with whether or not Defendants ever controlled the URLs, IOM does agree that "[w]hat Defendants control or don't control is an issue for the jury."[18]  Indeed, it is a crucial issue (as explained, *infra*).

Here, the evidence showing "[w]hat Defendants control or don't control" is precisely what Defendants have destroyed.  Without the now-destroyed evidence, the jury cannot properly determine if Defendants controlled the removal of content from the URLs.  This is because any evidence of a causal link between Defendants' de-listing and any contents under the URL has been destroyed.  Similarly, without the now-destroyed evidence, the jury cannot properly determine if Defendants controlled changes in listings under the URLs.  Likewise, without the now-

---

[15] *Id*. at p. 2.
[16] *Id*. at p. 2 (Section I of Defendants' Response).
[17] *Id*.
[18] *Id*.

6

destroyed evidence, the jury cannot properly determine if Defendants controlled the re-listing or placement of products under the URLs in question.

Axiomatically, because the evidence no longer exists, the jury cannot review evidence of "[w]hat Defendants control or don't control[.]"[19]

The law on spoliation is intended to prevent precisely this type of problem (namely, depriving the jury of crucial trial evidence, such as whether or not Defendants controlled the product listings under the identified URLs).

Because Defendants' spoliation is ongoing in the face of prior sanctions, the most severe penalty is both appropriate and necessary.

> 2. <u>Although the URLs Have Always Been Available at All Times, Without Constant and Uninterrupted Monitoring of the URLs It Is Impossible for IOM to Monitor or Document All of the Changes That Defendants Make (and Continue to Make) to the Contents Under Those URLs</u>

Defendants' second argument is that IOM "has not been prevented from documenting these changes [to the URLs]."[20] Defendants are wrong.

First, IOM's Exhibits clearly show that the URLs themselves have not changed.[21] The <u>contents of the URLs</u>, however, have changed over time.[22] Defendants acknowledge, "[l]istings that Defendant controls are not the same thing as the URLs[.]"[23] As explained, *supra*, the URLs standing alone are not the issue;

---

[19]   *Id*.
[20]   *Id*. at p. 3 (Section II of Defendants' Response).
[21]   See, Exhs C [Doc. 106-3] and D [Doc. 106-4].
[22]   See, Exhs C [Doc. 106-3] and D [Doc. 106-4].
[23]   Response, Doc. 109, at p. 2.

Defendants' contents in conjunction with the URLs are the issue. Thus, Defendants miss the point by addressing only the URLs (without addressing the product listings associated those URLs).

Second, Defendants insist that "[t]here is no rule or duty that requires Defendant to assemble and document information that is available only through third parties (eBay and Amazon), and then to provide that information to Plaintiff."[24] Defendants' argument is based on a false presumption, namely, that Defendants do not control the product listings that appear under the URLs.

Defendants appear to acknowledge that there are "[l]istings that Defendant controls[.]"[25] Certainly, Defendants have a duty to "assemble and document" any changes to "[l]istings that Defendant controls[,]"[26] especially when the question of how those changes affect the contents of the URLs "is an issue for the jury."[27]

Here, Defendants failed to preserve crucial evidence, even though they were sanctioned previously for the same conduct. Consequently, the Court should impose the harshest sanctions for Defendants' ongoing spoliation.

> 3. Defendants Simultaneously Argue That the Contents of the URLs Is Collateral, While Insisting That the Jury Must Determine Whether or Not Defendants Control the Contents of the URLs

Defendants' third argument is that "[t]he content of the URLs is collateral to

---

[24] *Id*. at p. 4.
[25] *Id*. at p. 2.
[26] *Id*.
[27] *Id*.

Plaintiff's prima facie case."[28]  At the same time, Defendants argue that "[w]ho controls the URLs and meta tags on these third-party websites is a jury issue"[29] and that "[a]ttempting an end run around a jury's determination of disputed material facts with a spoliation motion should not be permitted."[30]

First, whether or not Defendants control the contents that appear under the URLs is a disputed material fact that requires determination by a jury.  Even Defendants insist that the issue of control is a "disputed material fact" that requires "a jury's determination."  It is difficult to imagine how such a central "jury issue" on a "disputed material fact" can be collateral.

Second, IOM's spoliation motion does not attempt an end-run to remove an issue from the jury.  To the contrary, Defendants' spoliation constitutes the end-run.  This is because Defendants' spoliation prevents the jury from considering crucial evidence on the disputed material fact about what Defendants control.

At bottom, Defendants themselves insist that "[w]hat Defendants control and don't control is an issue for the jury."[31]  Certainly, such a crucial issue (reserved for jury determination) cannot be collateral.

Defendants' deliberate spoliation of crucial evidence deserves the most severe penalty because Defendants knew that a central issue for jury determination was whether or not Defendants controlled the listings under the identified URLs.

---

[28]  *Id*. at p. 4 (Section III of Defendants' Response).
[29]  *Id*. at at p. 3.
[30]  *Id*.
[31]  *Id*. at p. 2.

4. <u>Defendants Incorrectly Allege That Spoliation of the Contents Under the URLs Is Unconnected to the Previous Spoliation of the Contents of Defendants' Website</u>

Defendants' fourth (and final) argument is that "[t]he current motion has nothing to do with Defendants' website"[32] because the motion "concern[s] the content of third-party websites - eBay and Amazon."[33] Yet, in the very next sentence, Defendants insist that "<u>Defendant posts listings to these websites</u> through her eBay and Amazon account."[34]

First, whether or not the posted listings are on Defendants' website, or on eBay, or on Amazon is immaterial. In other words, <u>where</u> Defendants post is unimportant; the fact that Defendants controlled the postings is important. Here, it is clear that "Defendant posts listings to these websites"[35] and, therefore, Defendants control the posted listings. Consequently, Defendants' current spoliation is no different from Defendants' previous spoliation.

Ultimately, Defendants have an affirmative obligation to preserve any changes to the listings, especially since Defendants (not eBay or Amazon or any other entity) "post[] listings to these websites through [Defendants'] eBay and Amazon account."[36] Defendants have failed to preserve or document any de-listing of products, changes to product listings, or re-listing of products.

---

[32] *Id*. at p. 6 (Section IV of Defendants' Response).
[33] *Id*.
[34] *Id*. (emphasis supplied).
[35] *Id*. (emphasis supplied).
[36] *Id*.

10

Defendants' ongoing spoliation of crucial evidence is both deliberate and malicious. The harshest penalty is both appropriate and necessary.

## IV.   CONCLUSION

Because of Defendants' deliberate disregard for crucial trial evidence, the Court should impose the most severe penalty and:

(a)    STRIKE Defendants' Answer;

(b)    ENTER Default Judgment against Defendants, holding Defendants liable on all Counts;

(c)    PERMANENTLY ENJOIN Defendants for their ongoing violation of IOM's federally registered trademarks; and

(d)    allow IOM to proceed to trial on only the amount of damages.

[SIGNATURES TO FOLLOW]

Respectfully submitted, 2020-Sep-8.

| | |
|---|---|
| /s/ Daniel E. DeWoskin | /s/ Sam S. Han |
| Daniel E. DeWoskin | Sam S. Han |
| Georgia Bar No. 220327 | Georgia Bar No. 322284 |
| Counsel for Plaintiff | Co-Counsel for Plaintiff |
| | |
| DeWoskin Law Firm, LLC | DeWoskin Law Firm, LLC |
| 535 N. McDonough Street | 535 N. McDonough Street |
| Decatur, Georgia 30030 | Decatur, Georgia 30030 |
| (404) 987-0026 | (404) 987-0026 |
| dan@atlantatrial.com | sam@atlantatrial.com |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **INSTANT ONE MEDIA, INC.,**<br>Plaintiff,<br>v.<br>**EZFAUXDECOR, LLC,** *et al.*,<br>Defendants. | Civil Action Number<br>1:19-cv-00540-WMR<br><br>**CERTIFICATE OF COMPLIANCE**<br>**PURSUANT TO LR 7.1D** |

**CERTIFICATE OF COMPLIANCE PURSUANT TO LR 7.1D**

The undersigned counsel hereby certifies that **PLAINTIFF'S REPLY BRIEF ON PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR DELIBERATE AND ONGOING SPOLIATION OF TRIAL EVIDENCE** has been prepared using one of the font and point selections approved in LR 5.1 NDGa.

Respectfully submitted, 2020-Sep-8.

/s/ Daniel E. DeWoskin
Daniel E. DeWoskin
Georgia Bar No. 220327
Counsel for Plaintiff

DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
(404) 987-0026
dan@atlantatrial.com

/s/ Sam S. Han
Sam S. Han
Georgia Bar No. 322284
Co-Counsel for Plaintiff

DeWoskin Law Firm, LLC
535 N. McDonough Street
Decatur, Georgia 30030
(404) 987-0026
sam@atlantatrial.com

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **INSTANT ONE MEDIA, INC.,**<br>Plaintiff,<br>v.<br>**EZFAUXDECOR, LLC,** *et al*.,<br>Defendants. | Civil Action Number<br>1:19-cv-00540-WMR<br><br>**CERTIFICATE OF FILING AND SERVICE** |

**CERTIFICATE OF FILING AND SERVICE**

Plaintiff certifies that **PLAINTIFF'S REPLY BRIEF ON PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS FOR DELIBERATE AND ONGOING SPOLIATION OF TRIAL EVIDENCE** was filed using the CM/ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted, 2020-Sep-8.

| | |
|---|---|
| /s/ Daniel E. DeWoskin<br>Daniel E. DeWoskin<br>Georgia Bar No. 220327<br>Counsel for Plaintiff | /s/ Sam S. Han<br>Sam S. Han<br>Georgia Bar No. 322284<br>Co-Counsel for Plaintiff |
| DeWoskin Law Firm, LLC<br>535 N. McDonough Street<br>Decatur, Georgia 30030<br>(404) 987-0026<br>dan@atlantatrial.com | DeWoskin Law Firm, LLC<br>535 N. McDonough Street<br>Decatur, Georgia 30030<br>(404) 987-0026<br>sam@atlantatrial.com |

13